OPINION
{¶ 1} Robert E. Wittbrot ("Mr. Wittbrot") appeals from seven judgments of the Domestic Relations Division of the Clark County Court of Common Pleas, all of which involve various proceedings relating to child support orders and contempt proceedings initiated against him by his former wife, Sue Ann Wittbrot ("Mrs. Wittbrot").
 {¶ 2} Mr. and Mrs. Wittbrot divorced in Wisconsin effective September 21, 1995. The parties had three children. In the final divorce decree, the Wisconsin court ordered Mr. Wittbrot to pay child support in the amount of twenty-nine percent of his gross monthly income. It also ordered Mr. Wittbrot to pay a child support arrearage of $5,592.05 and attorney's fees in the amount of $1,500.
 {¶ 3} On June 6, 2000, Mrs. Wittbrot filed a petition requesting, in part, that Ohio assume jurisdiction over the parties' divorce, that the court find Mr. Wittbrot in contempt for failing to pay the $5,592.05 arrearage and $1,500 attorney's fees, and that the court issue an appropriate child support order. Mrs. Wittbrot also requested that Mr. Wittbrot be ordered to pay her reasonable attorney's fees incurred in connection with the petition.
 1. The November 8, 2000 Entry {¶ 4} A hearing was held on Mrs. Wittbrot's petition on October 19, 2000. At that hearing, Mr. Wittbrot's attorney indicated that he had no objection to Ohio assuming jurisdiction over the matter. Further, Mr. Wittbrot's attorney admitted that Mr. Wittbrot had not paid the arrearage or attorney's fees as ordered in the Wisconsin decree. Mr. Wittbrot argued that he was having financial difficulties and requested that the magistrate enter a child support award much lower than what he had been paying at the time of the parties' divorce.
 {¶ 5} At this hearing, the magistrate heard testimony regarding Mr. Wittbrot's employment status and educational history. Mr. Wittbrot attended the University of Wisconsin, receiving a Bachelor of Arts degree in 1980 and a Masters of Taxation in 1984. He is a certified public accountant; however, he is unable to practice as such because he did not maintain the continuing education requirements. At the time of the parties' divorce, Mr. Wittbrot was employed as the chief financial officer of a chocolate company, but he was terminated from that position when he failed to correct an accounting mistake made by a subordinate. He resigned from his subsequent job at Reliance National Insurance ("Reliance") in September of 1999 after having been demoted several times and eventually given the option of resigning or being terminated. At the time of his resignation from Reliance, Mr. Wittbrot was earning $74,000 per year. Following his resignation from Reliance, Mr. Wittbrot started an insurance agency. By September of 2000, he had lost $22,000 in setting up the business but was beginning to show a small profit. He testified that he expected his income to increase "dramatically" and to be "a lot more" than what he had been making at Reliance within three years.
 {¶ 6} Following the hearing, the magistrate entered a decision. In that decision, the magistrate accepted jurisdiction over the parties' Wisconsin divorce. The magistrate found Mr. Wittbrot in contempt for failure to pay the $5,592 arrearage and $1,500 attorney's fees as ordered by the Wisconsin divorce decree. Mr. Wittbrot was sentenced to thirty days in jail suspended upon the condition that he "pay the child support obligation and arrears payments as indicated below." Based upon the testimony at the hearing, the magistrate imputed an income of $74,000 per year to Mr. Wittbrot and ordered him to pay $1,466.10 per month in child support and $290 per month toward the arrearage, for a total of $1,791.22 per month including processing fees. The child support award was effective June 6, 2000, the date that Mrs. Wittbrot filed her petition. The magistrate ordered Mr. Wittbrot to seek work. Finally, the magistrate ordered Mr. Wittbrot to pay $200 toward Mrs. Wittbrot's attorney's fees. The trial court adopted the magistrate's orders in its November 8, 2000 entry.
 2. The December 27, 2000 Entry {¶ 7} Mr. Wittbrot filed objections to the magistrate's decision on November 16, 2000. Relevant to this appeal, he objected to the magistrate's imputation of income. On November 21, 2000, he filed a supplemental objection to the magistrate's order that he seek work. On December 27, 2000, the trial court filed an entry disposing of Mr. Wittbrot's objections. By agreement of the parties, the court ordered the magistrate's decision modified to delete the requirement that Mr. Wittbrot seek work. The court overruled Mr. Wittbrot's objection regarding the imputation of income, concluding that the magistrate had properly imputed income to Mr. Wittbrot under R.C. 3113.215(A)(5).
 3. The April 27, 2001 Entry {¶ 8} On February 26, 2001, Mrs. Wittbrot filed a charge of contempt alleging that Mr. Wittbrot had failed to pay her $1,500 and $200 in attorney's fees and had failed to make child support payments as ordered in the magistrate's November 8, 2000 decision. She requested that Mr. Wittbrot be found in contempt and ordered to pay her attorney's fees. Mr. Wittbrot was served with the charge, and a hearing was held before the magistrate on April 20, 2001.
 {¶ 9} The magistrate found Mr. Wittbrot in contempt and sentenced him to sixty days in jail, provided that Mr. Wittbrot could purge the contempt by paying $2,500 to the Clark County Child Support Enforcement Agency by June 11, 2001 at 3:00 p.m. The magistrate also restated its previous order that Mr. Wittbrot pay $1,791.22 per month in child support and payment toward his arrearage. The trial court adopted the magistrate's decision on April 27, 2001.
 4. The June 19, 2001 Entry {¶ 10} On June 11, 2001, the trial court held an imposition of sentencing hearing. At the hearing, the court concluded that Mr. Wittbrot had failed to purge himself as provided in the magistrate's order and sentenced Mr. Wittbrot to thirty days in jail. On June 19, 2001, the trial court filed an entry stating the same.
 5. The July 16, 2001 Entry[1] {¶ 11} On July 16, 2001, the trial court filed an entry reflecting that Mr. Wittbrot had paid an unspecified amount of money between June 11, 2001 and June 18, 2001, when he was to report to serve his jail sentence. Mr. Wittbrot did not thereafter report to the court on June 18, 2001. The trial court scheduled the matter for a hearing to determine Mr. Wittbrot's compliance, or lack thereof, with the court's orders. After numerous continuances, the hearing was held on January 4, 2002.
 6. The January 9, 2002 Entry {¶ 12} At the January 4, 2002 hearing, Mr. Wittbrot's attorney indicated that Mr. Wittbrot had made payments totaling $6,000 between June and December of 2001, with $2,000 of that having been paid in June. Mr. Wittbrot argued that he was still having financial difficulties but that the amount he had paid had increased from 2000 to 2001. He further asserted that he had paid the $2,500 ordered by the magistrate before June 18, 2001. The trial court concluded that Mr. Wittbrot had failed to purge himself of contempt and sentenced him to thirty days incarceration in the Clark County Jail.
 {¶ 13} In its January 9, 2002 entry reflecting the above orders, the trial court stated that the Magistrate had afforded Mr. Wittbrot an opportunity to purge himself of the contempt "by paying a lump sum of $2,500.00, plus attorneys fees in addition to maintaining his current support obligation in the sum of $1,466.10 per month, plus processing fee plus the additional sum of $290.00 per month, plus processing fee, to be applied against his existing child support arrearage which, as of November 20, 2001, totaled $22,703.74." The court concluded that Mr. Wittbrot had failed to substantially comply with the court's prior orders and had failed to purge himself of contempt of the court's orders. Mr. Wittbrot was sentenced to thirty days incarceration beginning January 4, 2002.
 7. The January 24, 2002 Entry {¶ 14} On November 8, 2001, Mr. Wittbrot filed a motion requesting that the trial court modify his child support obligation to reflect his actual income rather than the income imputed to him by the court. On January 15, 2002, Mr. Wittbrot filed a motion requesting that the court reduce or suspend his jail sentence so that he could return to work and protect his business interests and income. Both motions were addressed at a hearing on January 17, 2002.
 {¶ 15} With regard to Mr. Wittbrot's January 15, 2002 motion, the trial court suspended the balance of his sentence on the condition that he continue to comply with the court's orders regarding his child support obligation.
 {¶ 16} With regard to his November 8, 2001 motion, Mr. Wittbrot presented evidence that he had received commissions of $65,439.07 in 2001. He testified that he had had business expenses of $30,402.12. He thus sought to have the trial court determine his child support obligation based upon an income of $35,036.95. The trial court concluded that Mr. Wittbrot had not provided the Court with "sufficient evidence to establish the nature of the business expenses which he claimed in the sum of $30,402.12" and that it was "not willing * * * to afford Mr. Wittbrot a credit for his claimed `business expenses' absent evidence that these expenses [were] actually business related and [met] the definition of O.R.C. 3119.01(B)(9)(a) and (b)." Furthermore, the trial court concluded that it was still appropriate to impute income to Mr. Wittbrot in the amount of $74,000 per year given that his efforts to find a more profitable position had been minimal until just before the hearing. The court found that the factors set forth in R.C. 3113.215(A)(5) were still met.
 {¶ 17} However, the court noted that Mrs. Wittbrot's income had increased since November of 2000 from $45,198.40 to $59,854 and that she no longer had child care expenses in the sum of $149 per week. Based upon the change in Mrs. Wittbrot's income, the trial court modified Mr. Wittbrot's child support obligation and ordered him to pay $1,097 per month in child support. However, the court increased the monthly payment toward the arrearage to $659.10, resulting in a total payment amount that was essentially unchanged. This child support order was effective November 8, 2001, the day Mr. Wittbrot filed his motion seeking modification of the child support award.
 {¶ 18} On February 20, 2002, Mr. Wittbrot appealed from all seven of the entries discussed above. Mrs. Wittbrot filed a motion to dismiss, arguing that the February 20, 2002 notice of appeal was not timely with regard to the first four entries. We overruled that motion on July 10, 2002. Mrs. Wittbrot now requests that we reconsider that decision, which we decline to do.
 {¶ 19} Mr. Wittbrot raises six assignments of error on appeal. We will address these assignments in the order that best facilitates our discussion.
 {¶ 20} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPUTING INCOME TO THE APPELLANT WITHOUT COMPLYING WITH SECTION 3113.215 AND ITS SUCCESSOR SECTION 3119.01(C)(11) OF THE REVISED CODE."
 {¶ 21} Under this assignment of error, Mr. Wittbrot argues that the trial court erred in finding him to be voluntarily underemployed and failed to consider all the factors of R.C. 3113.215(A)(5) in imputing income to him in its November 8, 2000 entry. He also argues that the trial court erroneously applied R.C. 3113.215(A)(5) in imputing income to him in its January 24, 2002 entry when that statute had been repealed and replaced by R.C. 3119.01(C)(11).
 {¶ 22} At the time of the trial court's November 8, 2000 entry, R.C.3113.215(A)(5) governed the imputation of income to a party. That statute provided:
 {¶ 23} "`Potential income' means both of the following for a parent that the court * * * determines is voluntarily unemployed or voluntarily underemployed:
 {¶ 24} "(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides."
 {¶ 25} In imputing income to Mr. Wittbrot, the magistrate quoted the above language from the statute. It then stated: "The Court finds the Obligor has the education, qualifications and recent work history which indicate his ability to earn $74,000.00 per year. The Court will impute $74,000.00 per year to the Obligor." The magistrate clearly did not consider the prevailing job opportunities and salary levels in the community in which Mr. Wittbrot was residing, Cleveland, Ohio. Furthermore, no evidence was presented relating to the prevailing job opportunities and salary levels in Cleveland.
 {¶ 26} Failure to consider all of the factors set forth in R.C.3113.215(A)(5) constitutes an abuse of discretion. See Badovick v.Badovick (1998), 128 Ohio App.3d 18, 23, 713 N.E.2d 1066; Marsh v. Marsh
(1995), 105 Ohio App.3d 747, 751, 664 N.E.2d 1353 (reversing where there was no evidence or consideration of prevailing job opportunities or salary levels in the relevant community). Because it clearly failed to consider the prevailing job opportunities and salary levels in the community in which Mr. Wittbrot resided, the trial court abused its discretion in imputing income.
 {¶ 27} Mrs. Wittbrot argues that Mr. Wittbrot bargained away the order that he seek work by agreeing to the trial court's imputation of income. However, there is no evidence in the record to support this. Rather, the record reflects that Mrs. Wittbrot was not opposed to lifting the seek work order providing that the imputation of income stand. This statement by the trial court in its December 27, 2000 entry appears to merely reflect Mrs. Wittbrot's conclusion that the imputation of income was more important to her than the seek work order. It in no way makes any statement regarding an agreement by Mr. Wittbrot. Based upon this tenuous evidence, we cannot conclude that Mr. Wittbrot agreed to the imputation of income.
 {¶ 28} Mr. Wittbrot also argues that the court erred in concluding that he was voluntarily underemployed. We disagree. The evidence supported the trial court's conclusion. Mr. Wittbrot was terminated and forced to resign from his prior positions due to poor performance. Upon his termination from the position with Reliance, he chose to start an insurance agency rather than seek a job with a comparable salary. His efforts at finding another position were minimal at best. Based upon these facts, the trial court did not err in concluding that Mr. Wittbrot was voluntarily underemployed.
 {¶ 29} Finally, the trial court did, in fact, apply the wrong statute in its January 24, 2002 decision. R.C. 3113.215 was repealed in March of 2001, and the trial court erred in applying it to decide Mr. Wittbrot's motion to modify the child support order in January of 2002. The appropriate statute was R.C. 3119.01(C)(11). That statute sets out ten criteria to be considered in imputing income.
 {¶ 30} On remand, the court is to consider all of the factors in R.C. 3113.215 before imputing income to Mr. Wittbrot and to enter an appropriate child support award for the period between June 6, 2000 and November 8, 2001. The court should then consider the factors of R.C.3119.01(C)(11), together with factors considered in its January 24, 2002 entry, to determine an appropriate child support award for the period beginning November 8, 2001.
 {¶ 31} The second assignment of error is sustained.
 {¶ 32} "I. THE TRIAL COURT ERRED BY CONDITIONING EACH PURGE OF CONTEMPT ORDER WITH THE REQUIREMENT THAT THE APPELLANT COMPLY IN THE FUTURE WITH THE PRIOR ORDERS OF THE COURT.
 {¶ 33} "IV. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS CONSTITUTIONAL RIGHT OF DUE PROCESS BY CONSIDERING WHETHER THE APPELLANT HAD COMPLIED WITH THE ORDERS OF THE COURT AFTER FEBRUARY 26, 2001 WITHOUT ANY FURTHER NOTICE OR FILING OF CONTEMPT."
 {¶ 34} Because they raise essentially the same issues, we will discuss Mr. Wittbrot's first and fourth assignments of error together. Mr. Wittbrot argues that, in suspending punishment on the condition that he comply with the child support order in the future, the trial court did not properly allow him an opportunity to purge himself. Although our disposition of the second assignment of error renders this assignment moot to the extent that it involves Mr. Wittbrot's contempt of the trial court's child support orders, we will discuss Mr. Wittbrot's arguments in an effort to fully dispose of the legal issues in this case.
 {¶ 35} The parties apparently concede that this case involves civil contempt, defined as a violation primarily "against the party for whose benefit the order was made, and where the primary purpose of the punishment is remedial or coercive and for the benefit of the complainant." Tucker v. Tucker (1983), 10 Ohio App.3d 251, 252,461 N.E.2d 1337. The sanction for a civil contempt must give the contemnor an opportunity to purge himself of the contempt. Id. InTucker, the court found that an order suspending punishment for civil contempt on the condition that the contemnor comply with the child support order in the future did not properly allow for purging. Id. The court stated:
 {¶ 36} "Had the order provided for suspending the jail sentence on condition that plaintiff purge himself of his violation of the support order by paying the arrearage, it would have provided a true opportunity for purging. However, insofar as it purports to regulate future conduct, it simply amounts to the court's reaffirmation of its previous support order and can have no effect since any effort to punish a future violation of the support order would require new notice, hearing, and determination." Id., citing Grohoske v. Grohoske (June 16, 1983), Franklin App. No. 82AP-948.
 {¶ 37} Mr. Wittbrot points to three different entries of the trial court that he contends did not properly give him an opportunity to purge his contempt. The first is the trial court's November 8, 2000 entry. That entry sentenced Mr. Wittbrot to thirty days in jail, suspended upon the condition that he "pay the child support obligation and arrears payments as indicated below." To the extent that this order conditioned the purging of Mr. Wittbrot's contempt on future compliance with the child support order, it did not properly allow him an opportunity to purge himself under Tucker. However, as no sanctions were ever imposed upon Mr. Wittbrot with respect to this contempt finding, Mr. Wittbrot has failed to demonstrate any prejudice resulting from the trial court's error in its November 8, 2000 order.[2] See Grohoske, supra.
 {¶ 38} The second entry complained of by Mr. Wittbrot is the trial court's January 9, 2002 entry concluding that he had failed to purge himself of his contempt as ordered in April of 2001. The court's April 27, 2001 entry adopting the decision of the magistrate had ordered Mr. Wittbrot to pay $2,500.00 by June 11, 2001 to purge his contempt. It is not disputed that he had failed to do so by June 11. Accordingly, the trial court sentenced Mr. Wittbrot to thirty days in jail and ordered him to report to serve his sentence on June 18, 2001. Mr. Wittbrot paid some money prior to June 18 and did not report as ordered. The trial court, in its July 19, 2001 entry, scheduled a hearing to determine whether Mr. Wittbrot had complied with the April 27, 2001 order. Due to numerous continuances, that hearing was not held until January 4, 2002.
 {¶ 39} In its January 9, 2002 entry, the trial court concluded that Mr. Wittbrot had not purged himself. Mr. Wittbrot argues that the trial court required him to maintain his child support payments in order to purge his contempt, which would be improper under Tucker. In its entry, the court stated: "[T]he Magistrate afforded Mr. Wittbrot the opportunity to purge himself of contempt by paying a lump sum of $2,500.00, plus attorneys fees in addition to maintaining his current support obligation in the sum of $1,466.10 per month, plus processing fee plus the additional sum of $290.00 per month, plus processing fee, to be applied against his existing child support arrearage which, as of November 20, 2001, totaled $22,703.74." This appears to be a misstatement of what the magistrate ordered. It is clear that the original order directing Mr. Wittbrot to pay $2,500 to purge his contempt was proper underTucker. It is equally clear that Mr. Wittbrot did not comply with this order. According to the certified Account Summary, Mr. Wittbrot paid $1,960.79 in June of 2001, nothing in July, $1,200 in August, and $800 each month in September, October, and November. His monthly obligation was $1,791.22. According to Ohio Adm. Code 5101.1-31-14, payments are first applied toward the current child support due then toward the arrearage. Therefore, the only month in which Mr. Wittbrot paid any money toward the $2,500 was June. As he paid less than $200, he clearly did not pay the amount required to purge himself of his contempt. See Leuvoy v.Luevoy (June 26, 2001), Franklin App. No. 00AP-1378.
 {¶ 40} Furthermore, we are not convinced that it would be error to order Mr. Wittbrot to purge himself by making payments on his arrearage in addition to maintaining his child support payments. See id.; Patel v.Patel (Sept. 9, 1999), Athens App. No. 99CA21. Courts have distinguished such orders from the order in Tucker, which spoke solely of future child support obligations. Leuvoy, supra; Patel, supra. In any case, we caution the trial court against confusing language such as that utilized in its January 9, 2002 entry. In the future, should Mr. Wittbrot be found in contempt of an order of the court, the appropriate action would be to allow him to purge himself by paying a lump sum or monthly payments toward his arrearage.
 {¶ 41} Finally, Mr. Wittbrot argues that the court erred in suspending the remainder of his jail term on the condition that he continue to comply with his child support payments. We agree. Although the court was not required to suspend Mr. Wittbrot's sentence, having done so, it was not permitted to impose conditions requiring Mr. Wittbrot to maintain his child support payments in the future.
 {¶ 42} The first and fourth assignments of error are overruled in part and sustained in part.
 {¶ 43} "V. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING THE APPELLANT ANY BUSINESS EXPENSE DEDUCTIONS FROM HIS 2001 INCOME WHEN RECALCULATING CHILD SUPPORT."
 {¶ 44} Under this assignment of error, Mr. Wittbrot contends that the trial court erred in not allowing him any business expenses for the year 2001. The trial court concluded that Mr. Wittbrot had not provided the Court with "sufficient evidence to establish the nature of the business expenses which he claimed in the sum of $30,402.12" and that it was "not willing * * * to afford Mr. Wittbrot a credit for his claimed `business expenses' absent evidence that these expenses [were] actually business related and [met] the definition of O.R.C. 3119.01(B)(9)(a) and (b)." As Mr. Wittbrot provided no evidence of his business expenses other than his bald assertion that he had such expenses in the amount of $30,402.12, we cannot conclude that the trial court abused its discretion.
 {¶ 45} The fifth assignment of error is overruled.
 {¶ 46} "III. THE SENTENCE OF THE DEFENDANT TO SIXTY DAYS IN JAIL FOR CONTEMPT OF THE COURT'S OHIO ORDERS ON MAY 1, 2001 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE DUE TO HIS INABILITY TO PAY AND A DENIAL OF DUE PROCESS DUE TO THE FAILURE TO AFFORD THE APPELLANT A HEARING ON THIS ISSUE."
 {¶ 47} This assignment of error is rendered moot by our disposition of the second assignment of error and is accordingly overruled.
 {¶ 48} "VI. THE IMPOSITION OF A JAIL SENTENCE ON APPELLANT AND THE TAKING OF THE APPELLANT'S PROPERTY BASED ON A CALCULATION OF POTENTIAL INCOME AND BASED ON AN ILLEGAL PURGE ORDER IS A DENIAL OF THE APPELLANT'SFIFTH AMENDMENT AND FOURTEENTH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION THAT HE NOT BE DEPRIVED OF LIBERTY OR PROPERTY WITHOUT DUE PROCESS OF LAW AND IN VIOLATION OF THE OHIO CONSTITUTION ARTICLE 1
SECTION 1 RIGHT TO PROPERTY AND THE INVIOLATE NATURE OF PRIVATE PROPERTY AS PROTECTED BY THE OHIO CONSTITUTION ARTICLE 1 SECTION 19."
 {¶ 49} Under this assignment of error, Mr. Wittbrot raises generally the same issues raised in his first and second assignments of error and asserts that "the judgment of the trial court should be reversed and child support recalculated as of June 6, 2000." Thus, this assignment of error is sustained according to our discussion of the second assignment of error.
 {¶ 50} The trial court's November 8, 2000, December 27, 2000, and January 24, 2002 judgments are reversed, and the matter remanded on the issues of child support and arrearage. The April 27, 2001, June 19, 2001, and January 9, 2002 judgments are affirmed.
BROGAN, J. and FAIN, J., concur.
[1] As we noted in our July 11, 2002 decision on Mrs. Wittbrot's motion to dismiss this appeal, this entry is not a final appealable order. Furthermore, Mr. Wittbrot does not raise any arguments associated with this entry.
[2] As discussed supra, in its second contempt finding, adopted by the trial court in its April 27, 2001 entry, the magistrate recommended that Mr. Wittbrot be sentenced to sixty days in jail because it was his second contempt finding. See R.C. 2705.05(A). However, as the trial court only sentenced Mr. Wittbrot to thirty days for the second contempt, the court's error in its conditions for purging the first contempt had no prejudicial impact upon Mr. Wittbrot.